**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. **RARE BREED TRIGGERS, LLC, a North Dakota limited liability company, and** | ) ) ) | CASE NO. 23-cv-00021-CVE-JFJ |
| 2. **ABC IP, LLC, a Delaware limited liability company,** | ) ) ) | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | ) ) ) | |
| -vs- | ) ) | |
| 1.  **MADISON CRAWFORD, an individual,** | ) | |
| 2. **DAVID GORMLEY, an individual,** | ) | |
| 3. **NATHAN GORMLEY, an individual,** | ) | |
| 4. **MDN UNLIMITED, INC., an Oklahoma corporation,** | ) ) | |
| 5. **MAC 6 MACHINING, LLC, an Oklahoma limited liability company,** | ) ) | |
| 6. **REVOLUTION PRECISION MACHINING, LLC, an Oklahoma limited liability company, and** | ) ) ) | |
| 7. **HENN INDUSTRIES, LLC d/b/a PRECISION HEAT TREATING, an Oklahoma limited liability company,** | ) ) ) | |
| **Defendants.** | ) ) ) ) ) ) | |

---

## COMPLAINT FOR PATENT INFRINGEMENT

---

This is an action for patent infringement in which Rare Breed Triggers, LLC ("Rare

Breed") and ABC IP LLC ("ABC") (collectively, "Plaintiffs") accuse Madison Crawford, David

Gormley, Nathan Gormley, MDN Unlimited, Inc., MAC 6 Machining, LLC, Revolution

Precision Machining, LLC, and Henn Industries, LLC d/b/a Precision Heat Treating of infringing U.S. Patent No. 10,514,223 ("the '223 Patent") as follows:

## PARTIES

1.      Rare Breed is a limited liability company organized under the laws of the State of North Dakota with an address at 3523 45th Street South, Suite 100, Fargo, ND 58104.

2.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, DE 19901.

3.      Upon information and belief, Defendant Madison Crawford ("Crawford") is an individual residing in the Northern District of Oklahoma having a last known address of 2461 Stone Creek Way, Mannford, OK 74044.

4.      Upon information and belief, Defendant David Gormley ("D. Gormley") is an individual residing at 1609 E. Thompson Avenue, Sapulpa, Oklahoma, 74066.

5.      Upon information and belief, Defendant Nathan Gormley ("N. Gormley") is an individual residing at 1814 E. Line Avenue, Sapulpa, Oklahoma, 74066.

6.      Upon information and belief, the individual defendants—Crawford, D. Gormley, and N. Gormley—are founders, owners, and directors of defendant MDN Unlimited, Inc. ("MDN").

7.      Defendant MDN is a corporation organized under the laws of the State of Oklahoma.

8.      The registered agent of defendant MDN is D. Gormley at 1609 E. Thompson Avenue, Sapulpa, Oklahoma, 74066.

9.      Upon information and belief, Crawford has also held, or currently holds, a principal interest in and/or directed the operations of 7050 Corp. 7050 Corp. has previously admitted to

committing willful patent infringement against U.S. Patent No. 10,514,223 ("the '223 Patent") and has been permanently enjoined, along with its "agents, employees, and those persons who acted or are acting in privity or participation with them."[1]

10.     On information and belief, defendant MAC 6 Machining, LLC ("MAC6"), is an Oklahoma limited liability company with a registered agent at 4711 W. 87th Street South, Tulsa, Oklahoma, 74137.

11.     On information and belief, defendant Revolution Precision Machining, LLC ("RPM"), is an Oklahoma limited liability company with a principal place of business at 1321 N 108th E Ave, Tulsa, Oklahoma 74116.

12.     On information and belief, defendant Henn Industries, LLC, d/b/a Precision Heat Treating ("PHT") is an Oklahoma limited liability company with a principal place of business at 6300 South 57th West Avenue, Tulsa, Oklahoma 74131.

## JURISDICTION AND VENUE

13.     This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(b), 281, 284, and 85.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

15.     Personal jurisdiction over Defendants is proper in this District because all Defendants reside in and/or have a place of business in this district.

---

[1] The action in which 7050 Corp., admitted to willful patent infringement of the '223 Patent is styled *Rare Breed Triggers et al., v. Graves et al.,* Case No. 4:22-cv-00107-GKF-JFJ (N.D. Okla. 2022) (hereinafter, "the Graves Lawsuit").

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

17.      This lawsuit asserts infringement of the '223 Patent. A true and correct copy of the '223 Patent is attached hereto as Exhibit A.

18.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019.

19.     ABC is the current assignee and owner of all right, title and interest in and to the '223 Patent. This assignment has not been recorded at the United States Patent and Trademark Office ("USPTO"). Rare Breed is the exclusive licensee of the '223 Patent and possesses exclusive rights of the '223 Patent.

20.     Upon information and belief, Crawford, D. Gormley, N. Gormley, MDN, MAC6, RPM, and PHT (collectively, "Defendants") have committed acts of patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

21.     The Plaintiffs and Defendants operate in the firearms industry.

22.     Plaintiffs are responsible for developing the first commercial forced reset semiautomatic trigger, including the Rare Breed FRT-15™ for use in the AR-15 weapon platform. The FRT-15™ trigger is one embodiment of the '223 Patent's invention.

23.     For the entire time the FRT-15™ has been marketed and sold by Rare Breed, it has been marked with a patent notice complying with 35 U.S.C. § 287. The patent number is engraved on the product and displayed on packaging as shown below:



24.     The Rare Breed FRT-15™ trigger was first introduced to the market in December

2020. It is unique, being the only hammer-forced-reset semiautomatic trigger on the market and

exclusively protected by the '223 Patent. The unique FRT-15™ trigger created a new market for

the product that did not exist before. The FRT-15™ trigger has been the subject of much publicity,

consumer interest, and vigorous sales. As shown in paragraph 23, above, the FRT-15™ has

consistently been marked with "US PAT. 10514223" in compliance with 35 U.S.C. § 287.

25.     Rare Breed has also sold the Wide Open Trigger (WOT), which is covered by the

'223 Patent.

26.     Defendants are responsible for misappropriating Plaintiffs' proprietary technology

and selling it as their own in direct competition with Rare Breed.

27.     On March 8, 2022, Plaintiffs filed a patent infringement suit in this district alleging

infringement of the '223 patent by 7050 Corp. and others. This action is referred to herein as the

"Graves Lawsuit."

28.     The defendants in the Graves Lawsuit were alleged to have infringed the '223 Patent by their manufacture, use, and sale of the Powered by Graves Alamo-15 ("Alamo-15") trigger. Crawford was the registered agent for Powered By Graves, Inc. who was served with the summons and complaint in the Graves Lawsuit, General Manager of Janeway Machine, and President/co-owner of 7050 Corp.

29.     On information and belief, after being served with the Complaint in the Graves Lawsuit, 7050 Corp. began designing a substitute product that was a colorable imitation of the Alamo-15 trigger to sell in the event the Alamo-15 would be found to infringe and/or enjoined.

30.     On information and belief, the product 7050 Corp. designed was called the "PARASAUR" or "PARASAUR-15" trigger (the "Alternate Design"), the design which ultimately became the PARA-15 Drop in Trigger (the "PARA-15" or "Infringing Device").

31.     On information and belief, defendant Crawford was a principal and/or directed the operations of 7050 Corp. and had direct, personal knowledge of the design of the Alternate Design, as well as the reason for its development.

32.     During the Graves Lawsuit, Plaintiffs were shown a prototype of the Alternate Design by representatives of 7050 Corp, pictured below.



The purpose of this showing was to inquire whether the proposed trigger was an infringement. Plaintiffs' representatives responded affirmatively.

33.     On information and belief, defendant Crawford misappropriated from 7050 Corp. the design information for the Alternative Design, including prototypes, prints, CAD models, and/or technical specifications and used them to make the PARA-15 trigger.

34.     On information and belief, this misappropriation occurred after Plaintiffs were shown the prototype Alternative Design by representatives of 7050 Corp. and Plaintiffs had expressed—and representatives of 7050 Corp. had acknowledged—that it was an infringement of the '223 Patent and no more than a colorable variation of the Alamo-15.

35.     On information and belief, defendant Crawford used his relationship and/or business connections with D. Gormley and N. Gormley to manufacture, offer, and sell the PARA-15 trigger as a business venture independent from 7050 Corp. or any of the other named defendants in the Graves Lawsuit.

36.     On information and belief, the PARA-15 triggers that were manufactured by or for Crawford, D. Gormley, and N. Gormley were manufactured using at least design plans, technical specifications, and/or other proprietary work-product of 7050 Corp. The manufacture and sale were without the authorization of 7050 Corp. or the Plaintiffs.

37.     Crawford approached Plaintiffs stating he had knowledge of a forced reset trigger product that was soon to be launched. Crawford claimed that he could "stop" the launch of the unnamed product if Plaintiffs paid him and other parties responsible for its soon-to-happen launch a substantial sum of money. Plaintiffs did not pay any money to Crawford or any other party to prevent the launch of the unnamed forced reset trigger product described by Crawford.

38.     On information and belief, the unnamed product Crawford referenced in his communication with Plaintiffs was the PARA-15 trigger.

39.     Crawford, D. Gormley, and N. Gormley began offering the Infringing Device, pictured below, for sale through the e-commerce website at triggerempire.com and through reseller dealers.



40.     By virtue of his position with 7050 Corp., Crawford had knowledge and awareness of the Graves Lawsuit and other patent infringement lawsuits brought by Plaintiffs against other entities or individuals, such as Mladen Thomas "Tom" Strbac (Case No. 1:22-cv-00280, N.D. Ohio 2022) and Big Daddy Unlimited (Case No. 1:22-cv-00061, N.D. Fla. 2022), Wide Open Enterprises, Anthony McKnight, and Douglas Rios (Case No. 1:21-cv-00149, N.D. Fla. 2021). These lawsuits may collectively be referred to as "Plaintiffs' Lawsuits."

41.     Plaintiffs learned that Crawford was working with D. Gormley and N. Gormley as part of his plan to use the misappropriated Alternate Design developed by 7050 Corp. to manufacture the Infringing Device.

42.     On information and belief, defendants MAC6, RPM, and PHT are participating in Crawford, D. Gormley, N. Gormley, and MDN's, scheme to manufacture, offer, and sell Infringing Devices.

43.     On information and belief, MAC6 is responsible for manufacturing, in cooperation with Crawford, D. Gormley, N. Gormley, and/or MDN, parts (e.g., housings and trigger members) specially designed for use in the Infringing Devices.

44.     On information and belief, RPM is responsible for manufacturing, in cooperation with Crawford, D. Gormley, N. Gormley, and/or MDN, parts specially designed for use in the Infringing Devices.

45.     On information and belief, PHT is responsible, in cooperation with Crawford, D. Gormley, N. Gormley, and/or MDN, for heat treating Infringing Devices and/or component parts specially designed for use in the Infringing Devices.

46.     Infringing Devices have been offered for sale online on the e-commerce site at www.triggerempire.com, as shown in the screen capture below.



47.     On information and belief, the e-commerce site www.triggerempire.com is owned and/or operated by Crawford, D. Gormley, and/or N. Gormley as individuals or as a partnership doing business as Trigger Empire. The website lists no reference to MDN or other entity (such as a corporation or limited liability company).

48.     Plaintiffs have diligently searched the available records of all 50 states and have not found a registered entity or fictitious name registration corresponding to "Trigger Empire."

49.     On information and belief, Defendants own and/or operate the e-commerce website at www.triggerempire.com anonymously in hope of shielding themselves from liability for infringing the '223 Patent.

50.     Infringing Devices have also been sold by private dealer/resellers.

51.     On information and belief, Infringing Devices being sold by private dealer/resellers were sold to those parties by MDN.

52.     On information and belief, online influencers have been paid to tout the Infringing Device and advertise for its sale online. On information and belief, a sum of at least $1,000.00 was paid from MDN to an online influencer for promotion and endorsement services of the Infringing Device.

53.     In designing the Infringing Device, Defendants copied the invention disclosed and claimed in the '223 Patent. The Infringing Device is a "drop-in" assembly that uses contact of the hammer, rather than the bolt (or bolt carrier), to reset the trigger in combination with a locking bar that keeps the trigger from being pulled again until the action returns to battery.

54.     The Infringing Device uses a "fin locking bar." This modification does not exclude the Infringing Device from the scope of the '223 Patent claims.

**The '223 Patent Invention**

55.     The '223 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow accelerated rate of semiautomatic firing. While the '223 Patent may be adapted to many types of firearms (including, but not limited to, AR-pattern firearms), the Plaintiffs' FRT-15™ trigger was designed as a drop-in replacement particularly to fit AR-15 pattern firearms.

56.     An example of the Rare Breed FRT-15™ trigger is shown in Paragraph 23, above.

57.     A standard AR-15 pattern firearm, for example, is a semiautomatic firearm. In standard semiautomatic firearms, the trigger releases a sear which allows a hammer to contact a firing pin and fire a chambered ammunition cartridge, i.e., a "round." Part of the force that propels the round is used to cycle the rifle's bolt/bolt carrier or "action" in a rearward direction which extracts and ejects the spent cartridge. A spring at the rear of the bolt carrier acts to return the bolt to its original firing position (i.e., into battery), and while so returning, a new cartridge (i.e., "round") is moved in the firing chamber. The longitudinal reciprocation of the bolt also resets the hammer and enables the weapon to be fired again. This process can be seen in the sequence of illustrations below.

58.     For background context, the following is a depiction and description of the operation of a *standard* **AR-pattern trigger mechanism**:



59.     The trigger is shown in purple. The hammer is shown in brown. The disconnector
is shown in green. The bolt carrier is shown in blue.

60.     The process is commenced by the trigger being pulled by the user. The trigger
releases the hammer from the trigger sear and allows the hammer to strike the firing pin.



61.     A portion of the propellant gas is used to begin the process of sending the bolt
carrier to the rear of the firearm.



62.     The rear-ward movement of bolt carrier cocks the hammer on the disconnector and
allows the bolt to return into battery with a new round inserted into the chamber. While this is
happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold

the trigger in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

63.     The '223 Patent discloses and claims a semiautomatic trigger that represents an improvement on the above-described technology because it makes the disconnector unnecessary in "forced reset" mode by forcibly returning the trigger to the reset state.

64.     In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user reduces pressure of the trigger, allowing the trigger to reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled by the user and held in the pulled position, because the user is not typically able to manually release pressure on the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single function of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

65.     The '223 Patent invention does not require a disconnector in the trigger mechanism. The '223 Patent teaches a forcible reset of the trigger by the hammer when the bolt carrier or bolt cycles to the rear. The '223 Patent also teaches a "locking bar" which limits movement of the trigger. The locking bar acts to prevent the trigger from functioning by being pulled a second (or subsequent) time by the user until the bolt carrier has returned to the in-battery position. This is depicted in the series of illustrations below.

66.     The following is a reproduction of a representative trigger assembly according to an embodiment of the '223 Patent:



67.     The trigger is shown in red. The hammer is shown in brown. The locking bar is shown in green. The bolt carrier is shown in blue.



68.     When the trigger functions as a result of being pulled, the hammer is released, which strikes the firing pin carried in the bolt carrier.

69.     As the round fires, propellant gas pressure causes the action to cycle. This begins the process of sending the bolt carrier toward the rear of the firearm.



70.     As the bolt carrier moves toward the rear of the firearm, the bolt carrier engages with and pushes the hammer rearward. The invention of the '223 Patent provides that the hammer contacts and forcibly resets the trigger. Simultaneously, the locking bar engages with the trigger and mechanically prevents the user from pulling the trigger again until the locking bar is reset. The locking bar cannot be reset until the bolt carrier returns to its in-battery position.

71.     As the bolt carrier returns forward to its in-battery position, a new round is moved into the chamber and the bolt closes. As the bolt closes, the bolt carrier contacts and pivots the locking bar, freeing the trigger to function a second time when pulled again by the user and the firing process is repeated.

72.     The claims of the '223 Patent define the scope of the invention. For example, Claim 4 specifies a housing, a hammer, a trigger member, and a locking bar.

### The Infringing Trigger

73.     Defendants are currently making, using, selling, and/or offering for sale a forced reset trigger assembly that embodies the technology claimed in the '223 Patent.

74.   Defendants' infringing trigger assembly is called the "Para-15 Drop in Trigger" ("the Infringing Device").  The Infringing Device is a "drop-in" replacement trigger assembly for an AR-pattern firearm. Exemplary photographs of the Infringing Device are shown below:

 

75.   Below is an illustration of internal components (without a housing)—primarily the trigger, hammer, locking bar, and locking bar spring, of the Infringing Device.



76.     Defendants' Infringing Device employs and embodies the technology claimed by the '223 Patent by using the hammer contact to forcibly reset the trigger and preventing the trigger from being pulled again until the forward action of the bolt carrier disengages the locking bar from the trigger, as specified in the claims of the '223 Patent. Furthermore, the Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins, as specified in Claim 4 of the '223 Patent.

77.     FIG. 2 of the '223 Patent, shown below colorized, is illustrative of one embodiment of the invention. FIG. 2 depicts a "drop-in" trigger assembly (with the housing partially cut away).



**FIG. 2**

78.     The hammer 18 includes a sear catch 46 that engages the sear 48 on the trigger member 26, when cocked.

79.     FIG. 3 is representative of one embodiment of the locking bar 62 and its relationship with the trigger 28, hammer 18, and bolt carrier 56.



**FIG. 3**

80.     The user can rotate a safety selector (60) between safe and fire (forced reset semiautomatic with locking bar) modes.

81.     For the reasons discussed in more specificity below, the Infringing Device infringes at least one claim of the '223 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271.

82.     In view of at least the Defendants' extensive knowledge of Plaintiffs' patent and enforcement efforts, including against entities who are now admitted infringers and permanently enjoined with which Crawford was directly involved and Defendants' deliberate efforts to conceal their identities and association with large-scale infringement through www.triggerempire.com, Defendants' commercial sale of the Infringing Device constitutes willful infringement of the '223 Patent.

<u>**Manufacture of the Infringing Device**</u>

83.     On information and belief, Crawford began manufacturing the Infringing Device with design information belonging to 7050 Corp. This was without the authorization of 7050 Corp., with whom Crawford was affiliated, and without the authorization of Plaintiffs.

84.     On information and belief, Crawford began manufacturing the Infringing Device with the assistance of D. Gormley and N. Gormley.

85.     On information and belief, on or about August 16, 2022, Crawford, D. Gormley, and/or N. Gormley launched www.triggerempire.com in order to anonymously sell the Infringing Device. The creation date for www.triggerempire.com is ascertainable by conducting a "WHOIS" search, as shown below.



86.     On or around the same time as the launch of www.triggerempire.com, Infringing Devices also have been or are offered for sale and sold by other dealer/resellers.

87.     On information and belief, Crawford, D. Gormley, and N. Gormley were making Infringing Devices and selling them to retailers and/or private dealers for resale.

88.     On information and belief, Crawford, D. Gormley and N. Gormley founded MDN as a putative liability shielding organization to insulate themselves from liability for their acts of willful patent infringement against Plaintiffs and the '223 Patent.

89.     On information and belief, MDN paid online influencers at least as early as August 24, 2022, to tout the Defendants' Infringing Device online.

## COUNT I – INFRINGEMENT OF THE '223 PATENT

90.     The allegations set forth in paragraphs 1-87 are fully incorporated into this First Count for Relief.

91.     Upon information and belief, Defendants have and continue to directly and/or indirectly infringe, including through the doctrine of equivalents, at least Claim 4 of the '223 Patent by making, using, selling, offering for sale, importing and/or promoting, providing, and causing to be used without authority within the United States, the Infringing Device. This infringement was and remains willful.

92.     An exemplary comparison of the Infringing Device with claim 4 of the '223 Patent is illustrated in the chart below:

| Claim Language | Infringing Device (PARA-15 Trigger) |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a | The Infringing Device is a trigger mechanism. |

| hammer when cycled, a trigger mechanism, comprising: | It is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |
|---|---|
| |  |
| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |



| | |
|---|---|
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Infringing Device includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions; | The Infringing Device includes a hammer with a sear notch and is mounted in the housing to pivot on a transverse axis between set and released positions. |





| | |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position; | The Infringing Device includes a trigger member with a sear and that is mounted in the housing to pivot on a transverse axis between set and released positions. |





The trigger member has a surface (shown above) positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled.
The contact causes the trigger member to be forced to the set position.

a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position.

The Infringing Device includes a locking bar that is pivotally mounted in the housing.



The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position.



The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaches a substantially in-battery position. In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.



93.     The working components of the Infringing Device include functional reproductions of the '223 Patent when comparing the working components of the Infringing Device to the language of the claims, which is the legal standard for infringement.

94.     Because the claims describe the invention as "comprising" the enumerated elements, the scope of the claims are not limited to those elements and the inclusion of additional structures or features not specified in a claim does not avoid infringement. Thus, the employment of a fin-shaped locking bar does not avoid infringement of the '223 Patent. Furthermore, the environment described in the preamble of at least Claim 4, including a firearm having a receiver

with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, is limited to just external environment and does not constitute claimed subject matter.

95.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct and/or indirect infringement of the '223 Patent under 35 U.S.C. § 271 (a), (b), and/or (c).

96.     Sales of the Infringing Device directly compete against and unlawfully displace Rare Breed's sales of triggers that embody the technology claimed in the '223 Patent.

97.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, and reputation.

98.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, including lost profits, lost royalties, or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.      A judgment in favor of Plaintiffs that Defendants have infringed and/or induced others to infringe the '223 Patent;

b.      A preliminary injunction enjoining Defendants and their agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or inducing the infringement of the '223 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

     c.      A permanent injunction enjoining Defendants and their agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '223 Patent, or other such equitable relief as the Court determines is warranted;

     d.      A judgment finding the Defendants jointly and severally liable and ordering Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '223 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

     e.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: January 13, 2023         Respectfully submitted,

/Colin H. Tucker/_____
Colin H. Tucker (OK Bar No. 16325)
  chtucker@rhodesokla.com
RHODES HIERONYMUS
Williams Center Tower II
Two West 2nd Street, Suite 1000
Tulsa Oklahoma 74103-3131
Tel: 918-582-1173
Fax: 918-592-3390

Of Counsel:

Glenn D. Bellamy (Pro Hac Vice pending)
  gbellamy@whe-law.com
Charles D. Pfister (Pro Hac Vice pending)
  cpfister@whe-law.com
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800

Cincinnati OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234

*Attorney for Plaintiffs*